UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
ALLY FINANCIAL INC. and ALLY BANK,

        Plaintiffs,

    v.

COMFORT AUTO GROUP NY LLC, HESHY
GOTTDIENER, ROUTE 206 AUTO GROUP,
LLC,

        Defendants.
---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-1281 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiffs Ally Financial Inc. and Ally Bank (collectively "Ally") commenced the above-captioned action against Defendants Comfort Auto Group NY LLC ("Comfort Auto"), Heshy Gottdiener, and Route 206 Auto Group, LLC ("Route 206") on March 9, 2020, (Compl., Docket Entry No. 1), and filed an Amended Complaint on May 8, 2020, asserting claims of breach of contract, breach of guaranty, and replevin arising from Comfort Auto, Gottdiener, and Route 206's alleged defaults on multiple commercial loans and floorplan financing arrangements extended by Ally to finance the operation of automobile dealerships. (Am. Compl. ¶¶ 150–238, Docket Entry No. 9.) On May 5, 2020, Comfort Auto, Gottdiener, and Route 206 answered the Complaint and asserted counterclaims against Ally. (Answer and Countercl., Docket Entry No. 7.) After Ally filed their Amended Complaint, Comfort Auto, Gottdiener, and Route 206 amended their Answer and Counterclaims three times, with Comfort Auto ultimately asserting counterclaims in the Third Amended Answer and Counterclaims (the "Third Amended

Counterclaims") against Ally[1] for breach of contract and breach of the implied covenant of good faith and fair dealing.[2] (*See* Am. Answer and Countercl., Docket Entry No. 18; Second Am. Countercl., Docket Entry No. 22; Third Am. Countercl. ¶¶ 41–52, Docket Entry No. 44.)

Ally moves to dismiss Comfort Auto's counterclaims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Comfort Auto opposes the motion.[3] For the reasons set forth below, the Court grants Ally's motion to dismiss Comfort Auto's counterclaims.[4]

**I. Background**

The Court assumes the truth of the factual allegations in the Third Amended Counterclaims for the purposes of this Memorandum and Order. *See Barrios v. Bello*, No. 20-

---

[1] On August 14, 2020, Gottdiener and Route 206 filed a stipulation of dismissal, dismissing the counterclaims set forth in the Second Amended Answer and Counterclaims with prejudice. (*See* Route 206 and Gottdiener Stipulation of Dismissal, Docket Entry No. 32.) Gottdiener and Route 206 did not bring counterclaims against Ally in the Third Amended Counterclaims. (*See* Third Am. Countercl.)

[2] On September 11, 2020, Ally moved to dismiss the Second Amended Counterclaims. (*See* Ally's Mot. to Dismiss the Second Am. Countercl., Docket Entry No. 37.) In view of Comfort Auto's subsequent amendment of its counterclaims, (*see* Third Am. Countercl.), the Court terminates Ally's prior motion as moot.

[3] (Ally's Mot to Dismiss ("Ally's Mot."), Docket Entry No. 48; Ally's Mem. in Supp. of Ally's Mot. ("Ally's Mem."), Docket Entry No. 49; Comfort Auto's Mem. in Opp'n to Ally's Mot. ("Comfort Auto's Opp'n"), Docket Entry No. 52.)

[4] On June 17, 2021, Magistrate Judge Roanne L. Mann granted Comfort Auto's attorney's motion to withdraw as counsel following "an irremediable breakdown in the attorney-client relationship" and declined to stay the case because Comfort Auto, Route 206, and Gottdiener had "for months, obstruct[ed] discovery and the progress of this case." (*See* Order dated June 17, 2021.) On July 22, 2021, Ally requested that the Court impose sanctions and enter default judgment against Comfort Auto, Route 206, and Gottdiener. (*See* Letter Mot. for Sanctions and Default, Docket Entry No. 71.) Because Ally's motion to dismiss the Third Amended Counterclaims was fully briefed on January 14, 2021, before Comfort Auto's counsel withdrew from the case, the Court decides the motion to dismiss before addressing Ally's request for sanctions and default judgment against Comfort Auto, Route 206, and Gottdiener.

CV-5228, 2021 WL 1630594, at *1 n.1 (S.D.N.Y. Apr. 27, 2021) ("For purposes of [the plaintiff's] motion to dismiss [the defendant's] counterclaim, the [c]ourt must accept the facts alleged in the counterclaim as true and extend all reasonable inferences in the counterclaimant's favor." (citing *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 374 (S.D.N.Y. 2020))); *GE Transp. Parts, LLC v. Cent. Ry. Mfg., LLC*, No. 19-CV-4826, 2021 WL 827146, at *1 (S.D.N.Y. Mar. 4, 2021) (stating, on a motion to dismiss counterclaims, that "the [c]ourt takes as true all factual allegations in [the defendant's] amended counterclaim and draws all reasonable inferences in its favor" (citation omitted)).

a. **The commercial financing agreements**

Counterclaim Defendants Ally Financial Inc. and Ally Bank are a Delaware corporation and commercial bank respectively. (Am. Compl. ¶¶ 1–2; Third Am. Countercl. ¶ 2.) On September 6, 2017, "the parties entered into several contracts with [Ally] . . . for the principal purpose of selling or leasing new and used vehicles to customers." (Third Am. Countercl. ¶ 3.) The agreements entered into include the Comfort inventory financing and security agreement (the "Comfort IFSA"), the Comfort commercial loan agreement (the "Comfort Commercial Loan Agreement"), the Comfort general security agreement (the "Comfort GSA"), and the cross-collateral, cross-default, and guaranty agreement (the "Cross Agreement") (collectively, the "Agreements"). (*Id.* ¶ 3.)

Ally alleges that pursuant to the Comfort IFSA, they "agreed to provide [Comfort Auto] with wholesale inventory floorplan finance accommodations in the form of an inventory financing line of credit to acquire new and used vehicles for the principal purpose of selling or

3

leasing them to retail customers in the ordinary course of business."[5]  (Am. Compl. ¶ 10.) Pursuant to the Comfort Commercial Loan Agreement and a separate commercial loan agreement with Route 206, Ally Bank provided additional financing in the form of a commercial term loan to Comfort Auto in the amount of $3.3 million and to Route 206 in the amount of $1.5 million.  (*Id.* ¶¶ 20–21, 48–49.)  Comfort Auto, Route 206, and Gottdiener guaranteed each other's obligations to Ally pursuant to the Cross Agreement.  (*Id.* ¶¶ 30, 58.)

      b.   **Ally's insecurity demands**

Comfort Auto alleges that sometime after the parties entered into the Agreements, Ally "demand[ed] . . . $1 million in additional credit support" and that on October 31, 2019, Ally increased "the interest rate" because they "felt insecure about [Comfort Auto's] ability to fulfill its obligations" after reviewing Comfort Auto's and Route 206's "financials."  (Third Am. Countercl. ¶¶ 4–5.)  "All payments that were returned were immediately paid, in most instances on the same day."  (*Id.* ¶ 4.)  On November 12, 2019, Ally sent written notice to Comfort Auto "of [their] intent . . . to appoint on-site representatives at the dealership 'to remain on . . . the [d]ealership's premises and other locations where vehicles constituting . . . Ally['s] . . . collateral are stored'" in order to "maintain physical control of vehicle keys, manufacturer certificates of origin, titles[,] and any other title or ownership documents."[6]  (*Id.* ¶ 5.)  Ally's on-site representatives arrived at Comfort Auto's premises at an unspecified date and took "possession of the titles for all vehicles, including those that were unencumbered, and placed liens on those

---

    [5]  The Court refers to Ally's allegations in the Amended Complaint solely for context and not for truth of the allegations asserted.

    [6]  Comfort Auto states that it attaches several exhibits to the Third Amended Counterclaims including the November 12, 2019 notice and notices to Kia Motors and Fiat Chrysler, (*see* Third Am. Countercl. ¶¶ 5, 10), however, no exhibits are attached to the Third Amended Counterclaims.

vehicles." (*Id.* ¶ 8.) Ally's representatives have "refused to release titles to all vehicles without payment for the entire vehicle amount that was sold for rather than simply the amount of the lien," which has resulted in vehicles with "titles that have not been released" and customers without access to the title for the vehicle they purchased. (*Id.*) Ally demands payment of $750 per day per representative "for the five representatives that are on-site." (*Id.* ¶ 9.)

Ally stopped giving Comfort Auto, Route 206, and Gottdiener funds "to operate their business pursuant to the Agreements" as a result of Ally's insecurity, and "made numerous . . . demands" that were "cumbersome and difficult, if not impossible" for Comfort Auto, Route 206, and Gottdiener to meet. (*Id.* ¶¶ 6–7.) Comfort Auto alleges that there was not "an actual breach at that point in time." (*Id.* ¶ 6.) Ally also sent notices to Kia Motors and Fiat Chrysler "requesting that all monies owned to [Comfort Auto, Route 206, and Gottdiener] for certain rebates and incentives should instead be paid to Ally." (*Id.* ¶ 10.)

On March 12, 2020, Ally informed Comfort Auto, Route 206, and Gottdiener "of their intent to recover all collateral" pursuant to the Comfort IFSA. (*Id.* ¶ 11.) Ally "later tried to impose a forbearance agreement with additional cumbersome requirements." (*Id.* ¶ 12.) Comfort Auto alleges that Ally's actions "create a situation that is counterproductive to both parties' interests" and Ally's "actions of withholding funds solely because they were worried about [Comfort Auto, Route 206, and Gottdiener's] conduct[] led to the alleged breach in question." (*Id.* ¶ 13.) Comfort Auto further alleges that while Ally may claim "that it was complying with the technical terms of the Agreements," they have acted in a manner that . . . deprives [them] of the benefit of the bargain, and contributed to the alleged breach" as Ally's "actions of preventing the sales of vehicles are severely hampering the ability of [Comfort Auto] to meet its obligations under the Agreements." (*Id.* ¶¶ 17–18.)

5

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 957 F.4th 141, 145 (2d Cir. Aug. 16, 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Ebel v. G/O Media, Inc.*, No. 20-CV-7483, 2021 WL 2037867, at *4 (S.D.N.Y. May 21, 2021) (quoting *Dubov v. Lewis*, No. 18-CV-3854, 2019 WL 1060652, at *2 (S.D.N.Y. Mar. 6, 2019)); *GE Transp. Parts, LLC*, 2021 WL 827146, at *2 ("Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint."); *800-Flowers, Inc., v. Floralbx, LLC*, No. 18-CV-2974, 2019 WL 4727533, at *1 (E.D.N.Y. Sept. 27,

2019) ("A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." (quoting *Diamond Collection, LLC v. Underwraps Costume Corp.*, No. 17-CV-61, 2019 WL 347503, at *2 (E.D.N.Y. Jan. 22, 2019))); *see also GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) ("As to content, a new counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*." (first citing 2 Moore's Federal Practice, § 12.34[1][a] (3d ed. 2018); then citing 6 Wright & Miller § 1407 (3d ed. 2018))); *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363, 2019 WL 6253804, at *2 (E.D.N.Y. Nov. 22, 2019) (quoting *GEOMC Co.*, 918 F.3d at 99).

### b. Comfort Auto fails to state a claim for breach of contract

Ally argues that Comfort Auto fails to state a claim for breach of contract under New York law for two reasons. (Ally's Mem. 9–10.) First, Ally argues that Comfort Auto "fails to plead that it has performed its obligations under the [f]inancing [c]ontracts" because Comfort Auto does not allege that it timely "remit[ted] loan repayments to . . . [Ally] required under the [Agreements]" or that it was "otherwise excused from or not obligated to make such payments." (*Id.* at 9–10.) Second, Ally argues that Comfort Auto "fails to plead which specific terms of the contract, if any, that . . . Ally . . . allegedly breached" because Comfort Auto "merely alleges, in conclusory terms, that [Ally's] . . . [l]oss [m]itigation [a]ction breached the [Agreements] while conveniently ignoring that *every single component of the [l]oss [m]itigation [a]ction is expressly permitted under the terms of the* [Agreements]." (*Id.* at 9–11.)

Comfort Auto argues that it sufficiently alleged both its performance and the breached provisions of the Agreements. (Comfort Auto's Opp'n 7.) Comfort Auto contends that it sufficiently alleged its performance because it "stated several times that payments were made in accordance with the Agreements" and that "an accounting must be performed." (*Id.*) Comfort

7

Auto also argues that it sufficiently alleged the breached provisions because it "asserts that the actions [Ally] undertook [were] not addressed in the Agreements at all" and "[n]owhere in the Agreements does it state that [Ally] may repossess inventory and titles which were already sold, nor does it mention the possibility or authority to instate on-site representatives." (*Id.*)

Under New York law, a plaintiff alleging breach of contract must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *DeFlora Lake Dev. Assocs., Inc. v. Park*, 654 F. App'x 9, 10 (2d Cir. 2016) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 F. App'x 37, 38 (2d Cir. 2014) (same).

### i. Comfort Auto fails to identify a specific provision of the Agreements breached

As a threshold matter, the Court notes that it is unclear whether Comfort Auto intended to incorporate by reference the terms of the Agreements as set forth in the Amended Complaint because Comfort Auto only briefly states in the Third Amended Counterclaims that it "entered into several contracts with [Ally] as outlined in [their] Complaint, including the Comfort IFSA, Comfort Commercial Loan Agreement, the Comfort GSA, and a Cross Collateral, Cross Default, and Guaranty Agreement . . . for the principal purpose of selling or leasing new and used vehicles to customers." (Third Am. Countercl. ¶ 3.) It is possible that Comfort Auto intended this cursory reference to incorporate both the terms of the Agreements as outlined in the Amended Complaint and the copies of the Agreements attached to the Amended Complaint. *See Chambers*, 282 F.3d at 152 ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam))); *Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*, No. 87-CV-7560, 1993

8

WL 42786, at *3 (S.D.N.Y. Feb. 17, 1993) ("Although plaintiffs' answer does not specifically identify the individual defendants as defendants on the counterclaims, it incorporates the complaint by reference."). However, Comfort Auto also states in the Third Amended Counterclaims that "[a]nything not specifically admitted to in this Answer is hereby denied" and appears to dispute the terms of the Agreements as set forth by Ally in its motion papers by arguing that there is "no mention of" Ally taking possession of the titles for all vehicles and installing on-site representatives in the Agreements. (Third Am. Countercl. ¶¶ 1, 4.) Disputes regarding the authenticity or accuracy of the Agreements preclude this Court's consideration on a motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (stating that to consider documentary evidence on a motion to dismiss, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006))); *Beer*, 463 F.3d at 134 ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." (first citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); and then citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001))); *Structured Asset Sales, LLC v. Sheeran*, No. 20-CV-4329, 2021 WL 1199495, at *5 (S.D.N.Y. Mar. 30, 2021) (same); *DeLeon v. Teamsters Local 802, LLC*, No. 20-CV-24, 2021 WL 1193191, at *8 (E.D.N.Y. Mar. 29, 2021) (same); *F.D.I.C. v. U.S. Mortg. Corp.*, 132 F. Supp. 3d 369, 381 (E.D.N.Y. 2015) (stating that in order to consider documentary evidence on a motion to dismiss, "it must be clear on the record that *no* dispute exists regarding the authenticity or accuracy of the document" and that "even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a

9

document render consideration impermissible" (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221 (N.D.N.Y. 2014))).

However, Comfort Auto fails to allege a claim for breach of contract regardless of whether the Court solely relies on the Third Amended Counterclaims or considers the provisions of the Agreements set forth in the Amended Complaint because Comfort Auto fails to identify any particular provision of the Agreements breached by Plaintiffs. *See Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-CV-432, 2021 WL 2667029, at *8 (S.D.N.Y. June 29, 2021) (holding that to state a claim for breach of contract, a plaintiff "must identify the essential terms of the contract, including a specific provision of the contract that was breached" (citing *NFA Grp. v. Lotus Rsch., Inc.*, 120 N.Y.S.3d 75, 76 (App. Div. 2020))); *Quintanilla v. WW Int'l, Inc.*, No. 20-CV-6261, 2021 WL 2077935, at *11 (S.D.N.Y. May 24, 2021) ("To plausibly allege a breach of contract, a plaintiff must identify 'the specific provisions of the contract upon which liability is predicated.'" (quoting *Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*, 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017))); *Shoppertrak RCT Corp. v. Barnes & Noble, Inc.*, No. 20-CV-3814, 2021 WL 517819, at *2 (S.D.N.Y. Feb. 10, 2021) (stating that case law "supports the notion that a plaintiff in a breach of express contract case must identify the provisions breached in her pleadings" and collecting cases); *Gianelli v. RE/MAX of New York, Inc.*, 41 N.Y.S.3d 273, 274 (App. Div. 2016) ("A breach of contract cause of action fails as a matter of law in the absence of any showing that a specific provision of the contract was breached."). While Comfort Auto describes actions that it alleges violates the Agreements including Ally's withholding of inventory, titles, and financing as well as their installment of on-site representatives, with respect to Ally's obligations under the Agreements, Comfort Auto only states that there was "no mention" of Ally's actions in the Agreements and makes conclusory statements that they "breach[ed] the Agreements between the

parties." (Third Am. Countercl. ¶¶ 4–9, 43–44; *see also* Defs.' Opp'n 7.) Comfort Auto's failure to identify any contractual provisions breached by Ally is fatal to its breach of contract claim. *See Quintanilla*, 2021 WL 2077935, at *11 (finding that the plaintiff's breach of contract claim fails because the plaintiff did "not identify which provision of the [contract] . . . created . . . a contractual obligation" to provide in-person classes); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (dismissing the plaintiffs' breach of contract claim for undisclosed markups on trades when the claim "failed to plead the essential terms of the alleged agreement between the parties and which provisions, if any, were breached"), *aff'd*, 759 F. App'x 42 (2d Cir. 2019); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015) ("New York law and the *Twombly-Iqbal* standard of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed." (quoting *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015))); *Transaero, Inc. v. Chappell*, No. 13-CV-5752, 2014 WL 1783732, at *10 (E.D.N.Y. May 6, 2014) ("A breach of contract claim will withstand a motion to dismiss only if plaintiff 'allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated.'" (alteration in original) (quoting *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013))); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (stating that while a plaintiff need not attach the contract or "quote the contractual provisions verbatim . . . , the complaint must at least set forth the terms of the agreement upon which liability is predicated by express reference" and finding that the plaintiff failed to state a claim because the plaintiff only asserted that "'certain contracts' set forth 'the commissions and other elements of compensation to be paid to [p]laintiff'" (quoting *Howell v. Am. Airlines, Inc.*,

11

No. 05-CV-3628, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006))); *Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*, 67 N.Y.S.3d 145, 146 (App. Div. 2017) (finding that the breach of contract claim was deficiently pled and stating that "[w]hile plaintiffs alleged, in their breach of fiduciary duty claims and their claim for breach of the covenant of good faith and fair dealing, conduct implicating specific provisions of the relevant contracts, they never pleaded, in those claims or the breach of contract claim, the breach of any specific contractual provisions"); *Gianelli*, 41 N.Y.S.3d at 274–75 (finding that the breach of contract claim failed as a matter of law when "the plaintiff failed to identify a specific provision of the contract that was allegedly breached when the former franchisee failed to assign the telephone number to [the defendant]").

Comfort Auto's breach of contract claim fails even if the Court were to consider the Agreements as outlined in the Amended Complaint. As Ally argues, their actions are expressly authorized in the Comfort IFSA. (*See* Comfort IFSA, annexed to Am. Compl. as Ex. A, Docket Entry No. 9-1.) Comfort Auto granted Ally a security interest in all of Comfort Auto's inventory "including but not limited to those for which either of the Ally Parties provide[] [i]nventory [f]inancing," (*id.* § III.D.1), and authorized them to take actions to protect their security interest such as demanding direct payment from account debtors of Comfort Auto, (*id.* § III.D.7 ("Dealership hereby authorizes and empowers each of the Ally Parties to demand, collect and receive from Account Debtors, and give such parties binding receipts for, all sums due and/or to become due and, in Dealership's name or otherwise, to prosecute suits therefor.")), placing on-site representatives at Comfort Auto's place of business to monitor and protect Ally's collateral, (*id.* § III.D.5 (authorizing Ally to send representatives to Comfort Auto, "remain on the premises for such time as such [Ally] may deem desirable")), and suspending Comfort Auto's credit line, which is discretionary, (*id.* § III.A.5, III.D.5 (stating that "[n]either of the Ally Parties has any

12

obligation whatsoever, under [the Comfort IFSA] or otherwise, to provide Inventory Financing to [Comfort Auto] under any circumstance. Each Ally party's decision to provide Inventory Financing to Dealership is solely within such party's exclusive judgment and discretion" and authorizing Ally "to take whatever additional actions as either or both of the Ally Parties may deem necessary or desirable to protect and preserve the Collateral")). In addition, the Comfort IFSA states that Comfort Auto is required to "pay charges in connection with Inventory Financing, including . . . collateral monitoring, non-compliance, . . . other administrative fees and expenses in connection with Inventory Financing." (*Id.* § III.B.6.) Accordingly, because Comfort Auto does not allege that Ally took actions not permitted by the Agreements, even if the Court were to consider the terms of the Agreements "as outlined in [the] Complaint," (*see* Third Am. Countercl. ¶ 3), Comfort Auto fails to state a claim for breach of contract. *See Fleisig v. ED&F Man Cap. Markets, Inc.*, No. 19-CV-8217, 2021 WL 2678675, at *10 (S.D.N.Y. June 30, 2021) ("Because [the defendant] did not take any action that was not expressly permitted by its contracts with the plaintiffs, the plaintiffs' claims for breach of contract are unavailing.").

      **ii.**    **Comfort Auto fails to allege that it performed under the Agreements**

Comfort Auto's breach of contract claim also fails because Comfort Auto failed to allege that it performed under the Agreements. *See Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2016 WL 3647687, at *5 (E.D.N.Y. July 1, 2016) ("In alleging a claim for breach of contract under New York law, [a] [p]laintiff is required to, at least, generally plead her own performance under the contract."); *Distributorsoutlet.com, LLC v. Glasstree, Inc.*, No. 11-CV-6079, 2016 WL 1273229, at *6 (E.D.N.Y. Mar. 31, 2016) (deeming "fatal to the [c]omplaint" the plaintiff's failure to allege whether it performed on the contract); *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534, 2011 WL 5238658, at *3 (E.D.N.Y. Nov. 1, 2011) ("A claimant's failure to

13

plead the performance of its own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded."); *S.O. Textiles Co. v. A&E Prods. Grp.*, 18 F. Supp. 2d 232, 238–39 (E.D.N.Y. 1998) (dismissing the complaint with leave to amend where "[the] plaintiff has failed to allege that it actually performed its obligations under any contract it may have had with [the defendant]"); *cf. Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 360 (S.D.N.Y. 2012) (finding that the plaintiff adequately alleged performance because the plaintiff stated that it performed "generally pursuant" to the agreement); *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 640 (E.D.N.Y. 2012) (denying motion to dismiss breach of home loan modification contract claim where the plaintiff generally averred that he met the condition precedent by submitting correct paperwork). Comfort Auto has failed to allege, even in conclusory fashion, that it performed its contractual obligations under the Agreements, and also does not allege what its obligations were. The Third Amended Counterclaims focuses on the actions taken by Ally. The only detail Comfort Auto provides as to its own performance suggests that an unspecified number of payments in an unspecified amount were paid after the payments were initially returned for insufficient funds.[7] (*See id.* ¶ 21 (stating that "[a]ll payments that were returned for insufficient funds were immediately paid").) This deficiency is fatal to the Third Amended Counterclaims. *See Distributorsoutlet.com, LLC*, 2016 WL 1273229, at *6–7 (finding the complaint "woefully

---

[7] In its opposition, Comfort Auto argues that it "stated several times that payments were made in accordance with the Agreements and [that] an accounting must be performed." (Comfort Auto's Opp'n 7.) However, Comfort Auto makes no such statements in the Third Amended Counterclaims, (*see generally* Third Am. Countercl.), and Comfort Auto may not amend its complaint through its motion papers, *see Distributorsoutlet.com, LLC v. Glasstree, Inc.*, No. 11-CV-6079, 2016 WL 1273229, at *6 n.13 (E.D.N.Y. Mar. 31, 2016) ("[I]t is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." (quoting *Weir v. City of New York*, No. 05-CV-9268, 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008))).

deficient" when the plaintiff failed to allege whether it paid any part of the required payments and stating that the "[p]laintiff utterly fail[ed] to distinguish between how much furniture was delivered as part of its performance . . . and how much furniture was delivered separately from those contracts, supposedly pursuant to some unspecified fourth office furniture contract — the terms of which are nowhere alleged by [the plaintiff]"); *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, No. 05-CV-9121, 2012 WL 6101991, at *5 (S.D.N.Y. Dec. 10, 2012) (finding that the plaintiff did not sufficiently plead its own performance when the plaintiff only pled that it provided "some customers" to a third party and the contract set forth specific quotas), *report and recommendation adopted*, 2013 WL 45868 (S.D.N.Y. Jan. 3, 2013); *Rojas v. Don King Prods., Inc.*, No. 11–CV–8468, 2012 WL 760336, at *3 (S.D.N.Y. Mar. 6, 2012) (dismissing breach of contract claim because "the complaint fail[ed] to allege compliance with the [contract] in even general terms"); *Syracuse v. Loomis Armored US, LLC*, No. 11-CV-744, 2012 WL 88332, at *5 (N.D.N.Y. Jan. 11, 2012) ("Plaintiff's failure to allege that it performed its own obligations under the contract, whatever they may be, is sufficient to warrant dismissal of its breach of contract causes of action."); *R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993) ("[W]hen pleading a claim for the breach of an express contract . . . the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract.").

Accordingly, the Court dismisses Comfort Auto's counterclaim for breach of contract.

### c. Comfort Auto fails to state a claim for breach of the covenant of good faith and fair dealing

Ally argues that Comfort Auto fails to state a claim for breach of the covenant of good faith and fair dealing because Comfort Auto's good faith and fair dealing claim is based on the same facts as its breach of contract claim, which Ally argues is not permitted under New York

15

law. (*See* Ally's Mem. 13–16.) In support, Ally points to language in the Third Amended Counterclaims stating that Ally "breached the Agreements in several of its actions" and "[i]n doing so, [Ally] ha[s] also breached the covenant of good faith and fair dealing." (*Id.* at 15 (quoting Third Am. Countercl. ¶¶ 48–52).) Ally also argues that Comfort Auto "improperly attempts to create new contractual rights . . . that the [p]arties did not previously bargain for and agree to in the [Agreements]" because Comfort Auto was never entitled to "continued financing." (*Id.* at 15–16.)

Comfort Auto argues that its counterclaims are not duplicative because "[t]he breach of contract [claim] is [pled] on concrete actions and modifications" and the breach of the covenant of good faith and fair dealing claim is premised on "the lack of good faith in [Ally's] actions and processes." (Comfort Auto's Opp'n. 8–9.) In support, Comfort Auto contends that the damages from the two claims are not the same as the breach of contract claim damages are "those incurred from the loss and effect" of its inventory, and the breach of good faith and fair dealing damages are "the loss of business." (*Id.* at 9.)

"Under New York law, 'implicit in every contract is a covenant of good faith and fair dealing[,] which encompasses any promises that a reasonable promisee would understand to be included.'" *Spinelli*, 903 F.3d at 205 (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)). "'[N]either party to a contract shall do anything [that] has the effect of destroying or injuring the right of the other party to receive the fruits of the contract,' or to violate the party's 'presumed intentions or reasonable expectations.'" *Id.* (alterations in original) (quoting *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)).

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same

16

facts, is also pled." *N.Y. Univ. v. Galderma Lab'ys*, 689 F. App'x 15, 18 (2d Cir. 2017) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.* (quoting *Cruz*, 720 F.3d at 125); *see also Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 486 (E.D.N.Y. 2020) ("[A] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." (quoting *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641 (S.D.N.Y. Mar. 17, 2020))). "To avoid redundancy, '[c]laims of breach of the implied covenant must be premised on a different set of facts from those underlying a claim for breach of contract.'" *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (quoting *Deutsche Bank Sec. Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (alteration omitted)).

Comfort Auto's implied covenant of good faith and fair dealing claim is duplicative of its breach of contract claim because the same facts support both claims. Comfort Auto alleges that Counterclaim Defendant failed to provide continued financing and access to inventory. (*See* Third Am. Countercl. ¶¶ 49–50.) These are the same allegations on which Comfort Auto's breach of contract claim is premised. (*See id.* ¶¶ 43–44.) Despite its arguments to the contrary, in its opposition brief, Comfort Auto reiterated that the underlying facts are the same for both claims by stating:

> [Comfort Auto] alleges that [Ally] breached the Agreements in several of its actions. In doing so, [Ally] ha[s] also breached the covenant of good faith and fair dealing, as [Comfort Auto] reasonably expected financing, its autonomy to continue for smooth functioning of their business, to have access to inventory and titles of vehicles for successful completion of sale of its vehicles, and no

17

> burden of on-site representatives. [Comfort Auto] [was] justified in [its] understanding of the continued financing and inventory without unreasonable takeover, subject to no breach on [its] part. As described above and in [Comfort Auto's] Answer, but for [Ally's] breaches of the contract, [Comfort Auto] would not have breached the Agreements.

(*See* Comfort Auto's Opp'n 8.) Comfort Auto's own briefing discusses the same facts for both claims and reiterates that in allegedly breaching the contract, Ally breached the implied covenant of good faith and fair dealing. (*See id.* (stating that Ally breached the Agreements and "[i]n doing so" also breached the covenant of good faith and fair dealing).) Such duplicative claims are not permitted under New York law. *See Mancuso v. L'Oreal USA, Inc.*, No. 21-CV-989, 2021 WL 1240328, at *5 (S.D.N.Y. Apr. 2, 2021) (dismissing the plaintiff's claim as redundant because the plaintiff's "claim for breach of the covenant of good faith and fair dealing rests on the same factual allegations as her claim for breach of contract"); *Schiff v. ZM Equity Partners, LLC*, No. 19-CV-4735, 2020 WL 5077712, at *8 (S.D.N.Y. Aug. 27, 2020) ("Claims (e) and (g) are premised on the same set of facts as those underlying his breach of contract claim: that is, [the plaintiff's] incentive compensation was reduced and ultimately withheld. And the relief [the plaintiff] is seeking for claim (f) regarding withholding information is 'intrinsically tied to the damages allegedly resulting from the breach of contract.'" (quoting *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 93 (S.D.N.Y. 2018))); *ARS Kabirwala, LP v. El Paso Kabirwala Cayman Co.*, No. 16-CV-6430, 2017 WL 3396422, at *4 (S.D.N.Y. Aug. 8, 2017) (finding duplicative the plaintiff's breach of the implied covenant of good faith and fair dealing because it arose "from the same factual predicate" as the breach of contract claim); *Mill Fin., LLC v. Gillett*, 992 N.Y.S.2d 20, 25 (App. Div. 2014) (dismissing claim for breach of the covenant of good faith and fair dealing because the plaintiff's breach of

18

contract claim arose for their inability to protect their collateral and the breach of good faith and fair dealing covenant claim arose from the "same operative facts").

Accordingly, the Court dismisses Comfort Auto's claim for breach of the implied covenant of good faith and fair dealing.[8]

### d. Leave to amend

Ally argues that the Court should not grant Comfort Auto leave to amend the Third Amended Counterclaims "because amendment is futile." (Ally's Mem. 13, 16.)

Comfort Auto does not address whether leave should be granted.

Comfort Auto has amended its counterclaims several times throughout this litigation. (Answer and Countercl.; Am. Answer and Countercl.; Second Am. Countercl.; Third Am. Countercl.) Despite filing multiple amendments, Comfort Auto has failed to cure any deficiencies in its submissions. Accordingly, the Court declines to grant Comfort Auto further leave to amend its counterclaims. *See Kim v. Chung Sook Lee*, No. 18-CV-12230, 2019 WL 4688692, at *4 (S.D.N.Y. Sept. 24, 2019) ("Despite filing multiple amendments, [the] [p]laintiff has failed to cure the deficiencies in his submissions. The [c]ourt therefore declines to grant [the] [p]laintiff further leave to amend his complaint."); *Ross v. Lloyds Banking Grp., PLC*, No. 11-CV-8530, 2013 WL 603314, at *4 (S.D.N.Y. Feb. 14, 2013) ("While a court . . . 'should freely give leave [to amend] when justice so requires,' it is wasteful and vexatious to undergo multiple rounds of amendments and motion practice to revisit rudimentary pleading defects." (quoting Rule 15(a)(2))); *see also Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir.

---

[8] Because Comfort Auto's claim is dismissed as redundant and in view of Comfort Auto's failure to allege the terms of the Agreements, the Court declines to address Ally's argument that Comfort Auto attempted to create new contractual rights. (*See* Ally's Mem. 15–16.)

2007) (holding a plaintiff is "not entitled to an advisory opinion from the [c]ourt informing [her] of the deficiencies in the complaint and then an opportunity to cure those deficiencies").

### III. Conclusion

Accordingly, the Court grants Ally's motion and dismisses Comfort Auto's counterclaims set forth in the Third Amended Counterclaims.

Dated: September 3, 2021
       Brooklyn, New York

                      SO ORDERED:

                      _____s/ MKB_____
                      MARGO K. BRODIE
                      United States District Judge